RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 05a0157p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

CAROLYN S. LONGWORTH,

        *Plaintiff-Appellant,*

    *v.*

COMMISSIONER SOCIAL SECURITY ADMINISTRATION,

        *Defendant-Appellee.*

No. 04-5350

---

Appeal from the United States District Court
for the Eastern District of Tennessee at Knoxville.
No. 02-00190—R. Leon Jordan, District Judge.

Submitted: March 10, 2005

Decided and Filed: April 4, 2005

Before: MARTIN and GILMAN, Circuit Judges; COHN, District Judge.[*]

---

## COUNSEL

**ON BRIEF:** Julie A. Atkins, ATKINS LAW OFFICE, Harlan, Kentucky, for Appellant. John L. Martin, OFFICE OF THE GENERAL COUNSEL, SOCIAL SECURITY ADMINISTRATION, Chicago, Illinois, for Appellee.

---

## OPINION

---

BOYCE F. MARTIN, JR., Circuit Judge. Carolyn Longworth applied for social security disability benefits on January 20, 2000. In June 2001, the administrative law judge found that she was not disabled within the parameters of the Social Security Act. Longworth appealed to the district court and the district court granted the Commissioner's motion for summary judgment. Longworth appealed, and for the following reasons, we AFFIRM the district court's judgment.

I.

Longworth was born January 20, 1949, and was fifty-one years old at the time she applied for benefits and fifty-two at the time of her hearing before the administrative law judge. She completed high school and certified nursing aide training and worked as a certified nursing aide from 1984 through 1999. In November 1999, Longworth stopped working because she experienced a seizure. Two months later, on

---

[*]The Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation.

January 20, 2000, she applied for disability benefits "due to seizures, depression, heart disease, hypertension, head, neck back and shoulder pain and shortness of breath." Her application was denied both initially and on reconsideration, and she subsequently requested a hearing before an administrative law judge. That hearing took place on March 6, 2001.

Based on Longworth's initial application for disability benefits, the administrative law judge reviewed numerous doctors' reports regarding Longworth's health, including reports on her one and only seizure, heart disease, hypertension, and shortness of breath. The reports demonstrate, and Longworth admitted at her hearing, that medication has adequately controlled all of these claimed ailments and she appears to have abandoned any claim for disability based on them. Thus, her claim for disability benefits is now based on two alleged impairments: (1) shoulder pain and (2) mental impairments. She asserts that the administrative law judge's conclusion that she is not disabled is not supported by substantial evidence, and also raises a claim that a more recent mental health evaluation constitutes new and material evidence of her disability and requires this Court to remand the case for further consideration.

At the hearing before the administrative law judge, Longworth testified that her shoulder pain prevents her from sleeping through the night, that she sometimes shops, goes to church, and spends most of her day lying down and watching television. She also testified that she walks a mile per day for exercise. The administrative law judge found that the "record does support . . . a finding that the claimant has pain in her shoulders and has reduced her range of motion as well as a decreased range of motion in her lumbar spine." This finding was based on reports from Drs. Wallace and Holloway. Dr. Wallace reported "tenderness in the rotator cuff" and diagnosed Longworth with "Rotator Cuff Syndrome Bilateral 726.10" and "Adhesive Capsulitis 726.0l," treated her with injections of "Xylocaine, Marcaine and Celestrone," and "gave her a prescription for therapy to take for two weeks." Dr. Wallace also informed Longworth that if she experienced no improvement, he would refer her to Dr. Holloway, a shoulder specialist.

A referral was ultimately made and Dr. Holloway examined Longworth and reported a "marked limitation of range of motion in both her shoulder[s]. She has only about 60-70 degrees of both active and passive elevation and -30 degrees of external rotation arm to side." Dr. Holloway's "impression" was that Longworth suffers from "[a]dhesive capsulitis or frozen shoulders, bilaterally." Based on this diagnosis, Dr. Holloway recommended that Longworth "may consider a cortisone shot and physical therapy. We will get her into physical therapy working on a stretching program. We discussed that conservative treatment working on range of motion is the best treatment for a frozen shoulder. If her symptoms continue despite this, then certainly she may need to consider arthroscopic or manipulation." The record indicates Longworth attended three sessions of physical therapy.

Longworth also claimed disability based on mental impairments, including depression, inability to concentrate, and "borderline intelligence." On March 6, 2000, Longworth underwent a mental health evaluation and a battery of psychological tests were administered to her, including the Wechsler Adult Intelligence Scale-III. Longworth achieved a verbal IQ of 54, a performance IQ of 56 and a full scale IQ of 51. Longworth could name only two presidents of the United States since 1950 and incorrectly answered seven minus three and seventeen minus nine. The evaluators, Alice K. Garland, M.S., and Bruce Seidner, Ph.D., diagnosed Longworth as malingering with regard to her cognitive defects and concluded that the IQ test results were not likely reflective of her true capabilities.

As part of the inquiry into whether Longworth was entitled to benefits, the administrative law judge determined Longworth's residual functioning capacity, defined in the Regulations as the most an individual can still do after considering the effect of the physical and mental limitations that affect the ability to perform work-related tasks. 20 C.F.R. § 404.1545. Considering all the medical evidence, including her alleged shoulder and mental limitations, the administrative law judge concluded that while Longworth would not be able to return to her previous work as a nursing assistant, she was capable of performing "light work" with some limitations. Someone who can perform the full range of light work is not disabled within the Medical Vocational Guidelines, but if a claimant's ability to perform the full range of light work is

impeded by any exertional or non-exertional limitations, an impartial vocational expert may be used to determine "whether or not there are a significant number of jobs in the national economy that the claimant can perform given her residual functional capacity and other vocational factors." *Id.* A vocational expert was utilized, and at the hearing, the administrative law judge posed the following hypothetical question:

> Assume I were to restrict the claimant to light, residual functional capacity but light, residual functional capacity would be reduced by the fact that she would need a job that didn't require her to work around heights, moving machinery or in hazardous conditions. She would have postural restrictions which would preclude her from any climbing or balancing and she shouldn't do any more than occasional stooping, crouching, crawling or kneeling. Because of the problems she describes with her shoulders, she should not have work that requires her to do any reaching overhead with either arm and she would also need work that didn't require any heavy grasping with either hand. Because of breathing problems, the claimant would be precluded from work that would expose her to dust, fumes, chemicals and noxious gases and because of the depression that she describes and the difficulties that she's had adjusting to her reduced circumstances, she would have a limited but satisfactory, meaning mild to moderate limitation, in her ability to deal with work stresses, to maintain attention and concentration, to understand, remember and carry out detailed instructions and to demonstrate reliability. Given those restrictions and taking into account the claimant's age, education and prior relevant work experience, are there jobs existing in the general area in which this claimant lives or in the several regions of the country she could perform?

In response, the vocational expert testified that Longworth "would be able to perform the job of a cashier, ticket seller . . . inspector, checker and examiner and that of a grader and sorter," and that a significant number of those jobs existed. Considering Longworth's age, education, and skills (though non-transferable), the administrative law judge consulted the Medical Vocational Guidelines, specifically Rule 202.14, which direct a finding of "not disabled." Consequently, the administrative law judge concluded that Longworth was capable of adjusting to new employment and therefore was not under a disability within the meaning of the Act.

On appeal, the district court rejected Longworth's disability claims, finding the administrative law judge's decision supported by substantial evidence. The district court also rejected Longworth's claim that a mental health evaluation performed after the administrative hearing constituted new and material evidence and therefore entered an order for summary judgment in favor of the Commissioner. Longworth filed this timely appeal asserting that the Commissioner's decision was not supported by substantial evidence and that we should remand the case for consideration of her 2002 mental health evaluation.

## II.

"This Court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (quoting *Walter v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997)). The substantial evidence standard is met if a "reasonable mind might accept the relevant evidence as adequate to support a conclusion." *Warner*, 375 F.3d at 390 (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981)) (internal quotation marks omitted). If substantial evidence supports the Commissioner's decision, this Court will defer to that finding "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Warner*, 375 F.3d at 390 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Pursuant to the five-step inquiry employed by administrative law judges to determine whether a claimant is disabled within the meaning of the Social Security Act, the claimant bears the burden of proof through the first four steps and the Commissioner bears the burden of proof at the final step. *Jones v.*

*Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). In this case, the administrative law judge determined that Longworth carried her burden of proof through the first four steps and demonstrated that she was "unable to perform any of her past relevant work" pursuant to 20 C.F.R. § 404.1565. At step five, to prevail, the Commissioner must "identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity," *id.,* and taking into account vocational factors such as age, education, and skills. *Walters*, 127 F.3d at 529. Thus, this Court's inquiry is limited to whether substantial evidence supports the administrative law judge's determination at step five of the inquiry - specifically, whether substantial evidence supports the administrative law judge's findings of Longworth's residual functioning capacity and the availability of jobs in significant numbers that accommodate her limitations.

A. Physical Disability

Longworth argues that there is not substantial evidence supporting the administrative law judge's determination that she can perform an adequate range of light work. "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work [the claimant] must have the ability to do substantially all of these activities." 20 C.F.R. § 404.1567(b).

Longworth claims she is unable to engage in light work because of her shoulder limitations. The physician who evaluated Longworth for the Disability Determination Service concluded that Longworth was capable of meeting the lifting requirements for light work and was capable of walking for about six hours in an eight-hour day and could sit for six hours in an eight-hour day. Longworth correctly points out that this evaluation was completed nine months prior to the onset of her shoulder pain and a year prior to her being diagnosed with a frozen shoulder. She now claims that her shoulder ailment prevents her from meeting the lifting requirements for light work. She does not claim, nor could she credibly do so, that the shoulder ailment casts any doubt on her ability to meet the walking and/or sitting requirements for light work.

To support her claim, Longworth quotes from Dr. Holloway's report which states that "[s]he has marked limitation of range of motion in both her shoulder[s]. She has only 60-70 degrees of both active and passive elevation and -30 degrees of external rotation arm to side." This statement, however, is the only objective medical evidence she cites. Longworth does not explain how this limited range of motion affects her ability to meet the lifting requirements. Moreover, Dr. Holloway imposed no restrictions on lifting and prescribed only physical therapy. The record indicates that Longworth attended three sessions of physical therapy. Longworth's claims, however, do not detract from the weight of evidence supporting the administrative law judge's conclusion, and in fact provide more support for the administrative law judge's conclusion, because "a lack of physical restrictions constitutes substantial evidence for a finding of non-disability." *Maher v. Sec'y of Health & Human Servs.*, 898 F.2d 1106, 1109 (6th Cir. 1989).

Longworth further claims that the administrative law judge's reliance on the vocational expert's testimony is improper because the administrative law judge's hypothetical failed to take into account Longworth's shoulder problems. An administrative law judge may rely upon a vocational expert's testimony in response to a hypothetical question. 20 C.F.R. § 416.960(b)-(c). Longworth's claim has no merit because the administrative judge's hypothetical explicitly accounted for her shoulder limitations. The administrative law judge stated: "Because of the problems she describes with her shoulders, she should not have work that requires her to do any reaching overhead with either arm and she would also need work that didn't require any heavy grasping with either hand." Thus, the administrative law judge gave Longworth the benefit of the doubt and factored her shoulder limitations into the hypothetical question. Even with her shoulder limitations factored in, the vocational expert testified that significant employment opportunities are available for Longworth, and she has not challenged this testimony.

B. Mental Disability

Longworth also claims that she is disabled by virtue of her limited mental capacity. She points to the results from an IQ test and further claims an inability to concentrate, forgetfulness, slow mental processes, and depression. Specifically, she claims that her IQ test scores place her intelligence level in the bottom ten percent nationally.

Longworth was examined on March 6, 2000, by Alice K. Garland, M.S., and Bruce Seidner, Ph.D. Longworth achieved a verbal IQ of 54, a performance IQ of 56, and a full scale IQ of 51 on the Wechsler Adult Intelligence Scale - III. Ms. Garland and Dr. Seidner concluded that Longworth "appeared to put forth little effort in testing which is not thought to be a valid representation of functioning." They consequently diagnosed her as "[m]alingering on testing," reflecting the evaluators' belief that Longworth intentionally feigned her cognitive impairments. The evaluators estimated that Longworth's true intelligence level was well within the borderline to low-average range.

Longworth was also examined on March 21, 2000, by Dr. Victor Pestrak for a mental residual functional capacity assessment and he concluded that Longworth was not significantly limited in understanding and memory, nor in her ability to carry out simple instructions, sustain an ordinary routine, make simple work related decisions, interact socially, and adapt appropriately to changes in the work setting. Dr. Pestrak found her moderately limited in her ability to carry out detailed instructions, maintain attention and concentration, and ability to complete a normal work day and work week without interruptions from psychologically based symptoms.

Based on Ms. Garland and Dr. Seidner's report, the administrative law judge found that Longworth malingered on her IQ test and her only real mental impairment is in her ability to concentrate. This finding was consistent with Dr. Pestrak's report of Longworth's limitations. The evidence regarding Longworth's depression is also unanimous in that she suffers from mild depression. Even so, the administrative law judge gave Longworth "the benefit of the doubt in her all [sic] conditions" and, in determining her residual functioning capacity, placed limitations on her ability to work because of her "limited but satisfactory ability to deal with work stresses, maintain attention and concentration, understand, remember and carry out detailed instructions and to demonstrate reliability."

Thus, Longworth's claim that she is mentally impaired by virtue of her extremely low intelligence level is contradicted by the express diagnosis by Ms. Garland and Dr. Seidner that Longworth malingered on her IQ test. Ms. Garland and Dr. Seidner estimated Longworth's intelligence to be well within the borderline to low average range and Dr. Pestrak found no severe mental impairments. Moreover, the fact that Longworth worked consistently and successfully as a nursing aide for fifteen years weighs heavily against her claim of severe mental impairment. If Longworth's intelligence level truly was in the bottom tenth percentile, the Dictionary of Occupational Titles indicates that she would have been unable to perform her job as a nursing assistant. *See Dictionary of Occupational Titles,* 355.674-014.

Longworth further claims that the administrative law judge's hypothetical question to the vocational expert failed to account for her mental limitations. This assertion is unfounded. The administrative law judge's hypothetical expressly asked the vocational expert to consider only jobs where Longworth could perform despite a "limited but satisfactory ability to deal with work stresses, maintain attention and concentration, understand, remember and carry out detailed instructions and to demonstrate reliability." The hypothetical question therefore did account for the moderate limitations described by the medical professionals who evaluated Longworth.

C. New and Material Evidence Claim

Longworth's final claim is that this Court should remand the case in light of new and material evidence of her mental disability. *See* 42 U.S.C. § 405(g) ("The court may . . . at any time order additional evidence to be taken . . . but only upon a showing that there is new evidence which is material and that there

is good cause for the failure to incorporate such evidence into the record in a prior proceeding."). The proponent of the new evidence bears the burden of proof that the evidence is both new and material. *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988). Longworth's briefly worded and conclusory claim is that an IQ test taken in 2002 provides new and material evidence that she is disabled. The district court concluded that this evidence is "largely cumulative of evidence and opinions already present in the record." We see no reason to disturb this finding.

### III.

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment in favor of the Commissioner.