NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0048n.06

No. 09-5773

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**Jan 19, 2011**

LEONARD GREEN, Clerk

JENNIFER DIANE SIMS,            )
                                )       ON APPEAL FROM THE
        Plaintiff-Appellant,    )       UNITED STATES DISTRICT
                                )       C O U R T   F O R   T H E
v.                              )       WESTERN DISTRICT OF
                                )       KENTUCKY
COMMISSIONER OF SOCIAL SECURITY, )
                                )       O P I N I O N
        Defendant-Appellee.     )

BEFORE:   BATCHELDER, Chief Judge; SUTTON and McKEAGUE, Circuit Judges.

**McKEAGUE, Circuit Judge.** Jennifer Diane Sims appeals a district court judgment that

affirmed the denial of her application for social security disability benefits. After careful

consideration of the record and the parties' arguments, we concur in the district court's assessment

that the decision of the Commissioner of Social Security is supported by substantial evidence. We

therefore affirm.

## I.  BACKGROUND

Plaintiff Jennifer Sims of Hopkinsville, Kentucky was born on April 16, 1968. In addition

to a high school education, she completed two years of college. She has worked as a medical

assistant, phlebotomist and courier. She sustained multiple injuries in a motor vehicle accident on

December 22, 2004, necessitating two back surgeries. She has not been gainfully employed since

then. She filed her application for disability benefits on April 18, 2005, claiming disability due to

injuries sustained in the accident. After her application was initially denied, an administrative law judge ("ALJ") conducted a hearing on August 16, 2007, at which plaintiff was represented by counsel. ALJ Kathleen Thomas issued her decision on December 11, 2007. She found that plaintiff had severe impairments that precluded her past work, including knee pain, obesity, depression, anxiety, a pain disorder, and post-traumatic stress disorder. However, the ALJ also found that plaintiff's statements about the severity of her pain were not entirely credible, and that she was able to perform a limited but significant range of sedentary work. Relying on the testimony of a vocational expert, the ALJ concluded that plaintiff was not disabled because a significant number of jobs within her residual functional capacity were available. That opinion became the final decision of the Commissioner when the Appeals Council declined further review on July 14, 2008.

Plaintiff then filed a timely complaint in the United States District Court for the Western District of Kentucky. The district court adopted the magistrate judge's report and recommendation over plaintiff's objections and upheld the Commissioner's decision on May 1, 2009. The district court (1) found no grounds to disturb the ALJ's assessment of plaintiff's credibility; (2) concluded the ALJ had not improperly discounted the opinion of plaintiff's treating physician; and (3) held that the hypothetical questions upon which the vocational expert's testimony was based were not materially flawed. Plaintiff has appealed, raising the same three issues she addressed to the district court.

## II. ANALYSIS

We review the judgment of the district court de novo. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). The Commissioner's conclusions must be upheld unless the

Commissioner applied erroneous legal standards or made findings of fact that were not supported by substantial evidence. *Id.* "Substantial evidence" is such evidence as "a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It is a less exacting standard than preponderance of the evidence. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). In determining whether the Commissioner's decision is supported by substantial evidence, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Id.*

### A. Deference Owed Treating Physician

First, plaintiff contends the Commissioner's decision is flawed because the ALJ improperly discounted the opinion of her treating physician. In June 2006, plaintiff was seen by Gary Spencer, M.D., a family physician who had treated her before her accident, for a check-up and consultation. On physical examination, Dr. Spencer noted tenderness in the lower lumbar and left knee areas, and pain down both legs secondary to plaintiff's back surgeries. In Dr. Spencer's opinion, plaintiff could not stand for more than one or two hours and could not work a full eight-hour shift due to back and leg pain.

Plaintiff contends that under the Commissioner's own regulations, particularly 20 C.F.R. § 404.1527, the opinion of Dr. Spencer, as a treating physician, is entitled either to controlling weight or at least great deference. *See Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242-43 (6th Cir. 2007) (treating physician's opinion is controlling if well-supported by medical evidence and not inconsistent with other substantial evidence; otherwise, the opinion is presumptively entitled to great deference, the weight to be determined by the ALJ based on consideration of numerous factors); *cf.*

*Bass*, 499 F.3d at 511 (ALJ is not bound by physician's conclusory opinion that claimant is unable to work). If a treating physician's opinion is not accorded controlling weight, the ALJ is required to explain how the opinion was weighed and why. 20 C.F.R. § 404.1527(d); *Bass*, 499 F.3d at 511. Plaintiff contends the ALJ did not give Dr. Spencer's opinion substantial deference and violated the applicable regulation by failing to adequately explain why.

We disagree. Like the district court, we hold that the ALJ committed no error in her evaluation of Dr. Spencer's opinion. The ALJ was fully cognizant of and explicitly observed her duty to give careful consideration to Dr. Spencer's opinion. She explained her refusal to grant Dr. Spencer's opinion controlling weight as follows:

> Dr. Spencer's opinion is not supported by objective medical findings or findings on examination, but rather based on what the claimant has subjectively told him, which is not fully credited. Objective testing (MRI's, x-rays, EMG/NCS) are either mild, normal or negative. At the time he offered this opinion, Dr. Spencer had not treated the claimant since well before her injury (about 18 months prior). Her treating specialists did not impose such limitations, and they are in a better position to evaluate her limitations/residuals. Dr. Spencer has since treated the claimant on a routine basis, [prescribing] medication refills every three to four months, but there is no change in her condition which would warrant the limitations he assessed. Moreover, the claimant did return to work in December 2005, but could not tolerate the prolonged standing/walking, bending and lifting associated with that job. She has consistently stated that prolonged standing and walking exacerbates her pain. She testified she is able to do light chores around the house, as long as she can sit and take the weight off her back/buttocks. Accordingly, Dr. Spencer's opinion is not persuasive and cannot be afforded "controlling weight."

A.R. 20, ALJ Decision p. 9. The ALJ thus considered several appropriate factors in evaluating Dr. Spencer's opinion, including: (1) the frequency of examination and length of his treatment relationship with plaintiff; (2) the nature and extent of their relationship; (3) the lack of medical evidence supporting his opinion; (4) the inconsistency of his opinion with objective testing results;

and (5) the fact that Dr. Spencer is not a specialist. *See* 20 C.F.R. § 404.1527(d); *Bass*, 499 F.3d at 511-12.

The ALJ correctly noted that Dr. Spencer's conclusory opinion about plaintiff's ability to work was based largely on plaintiff's subjective complaints and was not supported by other medical evidence in the record. *See* 20 C.F.R. § 404.1527(b) (medical opinions are to be evaluated in the context of the record as a whole).[1] In September 2005, plaintiff's medical records were reviewed by John Gedmark, M.D., who completed a physical residual functional capacity assessment. The ALJ noted that Dr. Gedmark identified exertional limitations resulting from plaintiff's physical impairments that would limit her to light work, as of December 2005. This opinion was consistent with that of rehabilitation specialist Barton W. Huddleston, M.D., who, in October 2005, after testing for and finding no neuropathic abnormalities in plaintiff's lower back and left leg, believed that she was showing improvement and would be able to return to part-time work after five to six weeks of continued conditioning, with eventual return to full-time work within six to eight weeks of her initial return to work.

In addition, Dr. Spencer's opinion was arguably at odds with the mental residual capacity assessment completed by Alex Guerrero, M.D., in November 2005. While Dr. Guerrero recognized that plaintiff suffered from anxiety and pain disorder, the only functional limitations he identified

---

[1]Moreover, Dr. Spencer's implied opinion that plaintiff was unable to work is tantamount to a disability opinion, a matter reserved to the Commissioner for determination. Such an opinion by a treating physician is not entitled to "any special significance." 20 C.F.R. § 404.1527(e). *See also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (recognizing the determination of disability to be the prerogative of the Commissioner, not the treating physician).

were non-disabling: "mild" limitation in activities of daily living; and "moderate" limitation in social functioning and in maintaining concentration, persistence and pace. Dr. Guerrero noted that these impairments limited plaintiff's ability to work, but she retained the ability: (1) to understand, remember, and carry out simple instructions and chores; (2) to relate adequately with co-workers and supervisors for task completion; and (3) to adapt to the changes in non-complex and "not too stressful" work situations.

We are thus satisfied that the ALJ gave adequate deference to Dr. Spencer's opinion by finding that plaintiff had impairments that precluded her past work and significantly limited the types of other jobs that she could perform. *See Bass*, 499 F.3d at 512; *Warner*, 375 F.3d at 391-92. To the extent the ALJ discounted Dr. Spencer's implied opinion that plaintiff was unable to perform any work, however, we concur in the district court's determination that the ALJ's analysis is sound and supported by substantial evidence.

**B. Credibility Assessment**

The ALJ devoted some eight pages of her thirteen-page opinion to a recapitulation of the evidence, including plaintiff's testimony, considered in support of plaintiff's claim. She concluded this summary as follows:

> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce some of the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.

A.R. 22, ALJ Decision p. 11. Plaintiff insists this explanation is insufficient to justify rejection of

her complaints of pain. In response, the district court correctly noted that the ALJ's credibility assessment could be disturbed only for a compelling reason, citing *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). *See also Warner*, 375 F.3d at 392 (recognizing ALJ's credibility assessment is entitled to "great deference" because ALJ is charged with duty of observing witness's demeanor). The district court held that plaintiff had presented no such compelling reason.

Our review of the ALJ's decision confirms that her credibility assessment—which did not entail an outright rejection of plaintiff's testimony, but only a partial crediting of it—is well-explained in light of the record evidence. A.R. 15-22, ALJ Decision pp. 4-11. Plaintiff testified that she suffered from chronic pain that limited her ability to stand, walk, and sit for any significant length of time. She also indicated that she was depressed and anxious. Yet, the ALJ noted that plaintiff's injuries had largely healed, that testing was negative for radicular pain, and that plaintiff had not been referred to treating specialists or to a pain management program.

A claimant's testimony may be discounted if it is contradicted by the medical reports and other evidence. *Warner*, 375 F.3d at 392. The medical evidence indicates that plaintiff had severe impairments, but it does not support her testimony regarding the extent of her limitations. The ALJ's analysis amply demonstrates that her finding that plaintiff was not fully credible is supported by substantial evidence. We find no error.

**C. Vocational Expert Testimony**

Because the ALJ determined that plaintiff had severe impairments and could no longer perform the duties of her past work, the burden shifted to the Commissioner to show that a

significant number of jobs within plaintiff's residual functional capacity were available. *See Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999). The ALJ posed a hypothetical question to a vocational expert to determine the types of jobs that might be available. The ALJ first asked the vocational expert to assume a claimant with the same educational and vocational background as plaintiff Sims, who could perform a limited range of light work. The ALJ indicated the hypothetical claimant could stand and walk for only two hours a day. She also asked the vocational expert to assume the claimant could perform no more than occasional climbing, kneeling, crouching, and crawling, with no climbing of ladders, ropes, or scaffolds. Finally, the ALJ asked the vocational expert to assume the claimant was restricted to simple work that was not complex or detailed and to jobs that had no interaction with the general public. The vocational expert indicated that a significant number of unskilled, sedentary jobs would be available to such a claimant, including jobs as a surveillance system monitor and bookkeeper/office worker.

Plaintiff contends the vocational expert's testimony is unreliable because the hypothetical questions posed by the ALJ did not include all of her limitations, citing *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002). Specifically, she contends the ALJ should have asked the vocational expert to also assume that the claimant was moderately limited in her ability to respond appropriately to changes in the work setting, as this limitation was noted in Dr. Guerrero's mental residual functional capacity assessment. The district court considered the omission of this limitation to be an error, but not one that rose to the level of reversible error. The court observed that there was no evidence to suggest that the addition of the limitation would have impacted the ability of the

hypothetical claimant to perform the duties of such available sedentary jobs as surveillance system monitor and bookkeeper/office worker.

Further, as the Commissioner points out, Dr. Guerrero ultimately concluded that plaintiff could adapt to changes in non-complex work situations that were not too stressful. It thus appears that the ALJ adequately accounted for this limitation by restricting the hypothetical question to simple work and by excluding complex or detailed jobs. *See Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 597-98 (6th Cir. 2005).

Plaintiff also argues that the hypothetical questions did not reflect Dr. Guerrero's conclusion that she was moderately limited in her ability to maintain attention and concentration. This argument fails because the ALJ asked the vocational expert if this restriction would impact a claimant's ability to work as a security monitor, and the expert testified that it would not.

The reports of Drs. Gedmark and Guerrero provided substantial support for the assumptions in the hypothetical questions the ALJ posed to the vocational expert. The hypothetical questions incorporated relevant impairments; any shortcoming was not so significant as to render the vocational expert's testimony unreliable. The vocational expert's responses therefore satisfied the Commissioner's burden of showing the existence of a significant number of jobs whose requirements were within plaintiff's residual functional capacity. Yes, the vocational expert's testimony could have been further refined; but as the district court pointed out, plaintiff's counsel had the opportunity to cross-examine, but asked only one question and did not probe the deficiency now identified on appeal.

### III. CONCLUSION

For the foregoing reasons, we concur in the district court's determination that the Commissioner's final decision denying plaintiff's application for disability benefits is not marked by application of any erroneous legal standard and is supported by substantial evidence. The district court's judgment upholding the decision is therefore **AFFIRMED.**