RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 11a0181p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

PETE JOHNSON,

               *Plaintiff-Appellant,*

    *v.*

COMMISSIONER OF SOCIAL SECURITY,

               *Defendant-Appellee.*

No. 10-5226

Appeal from the United States District Court
for the Western District of Kentucky at Paducah.
No. 09-00108—Edward H. Johnstone, District Judge.

Argued: June 1, 2011

Decided and Filed: July 8, 2011

Before: MARTIN, NORRIS, and SILER, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Craig Housman, Paducah, Kentucky, for Appellant. William Hogan, SOCIAL SECURITY ADMINISTRATION, Atlanta, Georgia, for Appellee. **ON BRIEF:** Craig Housman, Paducah, Kentucky, for Appellant. J. Patrick Powers, Mary Ann Sloan, Dennis R. Williams, Elyse S. Sharfman, Holly A. Grimes, Marcus M. Johns, SOCIAL SECURITY ADMINISTRATION, Atlanta, Georgia, James H. Barr, ASSISTANT UNITED STATES ATTORNEY, Louisville, Kentucky, for Appellee.

_____

## OPINION

_____

    ALAN E. NORRIS, Circuit Judge. Plaintiff Pete Johnson ("claimant") seeks review of the denial of his application for Disability Insurance Benefits under Title II of the Social Security Act. The sole issue on appeal is a relatively narrow one: Did the administrative law judge ("ALJ") err when he failed to give controlling weight to

1

claimant's treating physician and instead credited the assessment of a non-treating state agency physician who concluded that claimant had the capacity to perform a limited range of work?  Our review of the administrative record reveals that, contrary to the conclusion reached by the ALJ, the treating physician relied upon objective medical evidence when rendering her opinion that claimant was disabled.  As such, it should have been accorded controlling weight. We therefore vacate the judgment of the district court, which had affirmed the denial of benefits made by the Commissioner of Social Security ("Commissioner"), and remand the matter with instructions to award disability benefits to claimant.

## I.

*Procedural Posture*

Claimant, who was born in 1959, filed his application for disability benefits on October 4, 2006.  (A.R. 107).  The application alleged that his disability began on September 11, 2002 when he injured himself at a Chicago construction site.  After conducting an evidentiary hearing, the ALJ issued the decision under review on April 22, 2008.  (A.R. 14).  The Appeals Council denied claimant's request for review and, after that, his request for reconsideration.  (A.R. 1, 3).  Hence, the ALJ's decision represents the final decision of the Commissioner. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004); 20 C.F.R. § 404.981.

In response to these adverse decisions, claimant sought review in federal court. The matter was referred to a magistrate judge who issued a report and recommendation suggesting that the ALJ's decision be affirmed.  After considering claimant's objections, the district court adopted the magistrate's recommendation in a memorandum opinion and order.

*Standard of Review*

On appeal of the denial of benefits, we conduct de novo review of the district court's legal conclusion that the ALJ's decision was supported by substantial evidence. *Valley v. Comm'r of Soc. Sec.*, 427 F.3d 388, 390 (6th Cir. 2005). When deciding under 42 U.S.C. § 405(g) whether substantial evidence supports the ALJ's decision, we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility. *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).  If the ALJ's decision is supported by substantial evidence, then reversal would not be warranted even if substantial evidence would support the opposite conclusion. *Longworth v. Comm'r Soc. Sec Admin.*, 402 F.3d 591, 595 (6th Cir. 2005).  Given the highly deferential standard accorded to the factual findings of the ALJ, the following recitation draws heavily on the findings set forth in his decision.

*The ALJ's Factual Findings*

The ALJ noted that claimant, who is an ironworker, sustained a neck injury on September 11, 2002 which "caus[ed] sensory changes and loss of strength of the right upper extremity." (A.R. 17).  Tests revealed some nerve damage to his spine, as well as "evidence of moderate median neuropathy at the wrist on the right." *Id.*  Surgery was delayed by a year while claimant waited for the resolution of his Illinois worker's compensation claim.   On September 16, 2003, he had an operation to relieve the pressure on nerves affected by spinal compression.  Although he had some residual numbness, claimant reported "significant improvement in the right upper extremity." *Id.*

On March 24, 2004, he saw Dr. Edward Goldberg, who released him to work with the following permanent restrictions: lifting of 63 pounds occasionally, 49 pounds frequently, and 35 pounds constantly.  (A.R. 330-31).  In a follow-up visit that November, the doctor concluded that "I feel the patient will have some residual pain from the original condition for which he was treated.  I would recommend vocational rehabilitation if these restrictions cannot be accommodated by his employer." (A.R. 328).

On April 6, 2005, claimant visited an emergency room complaining of back pain. X-rays revealed "multi-level moderate degenerative changes" and "chronic degenerative changes at L5-S1." (A.R. 17). In August 2005, he saw his primary care physician, Dr. Charlene Robinson, who prescribed OxyContin for neck and right upper extremity complaints. (A.R. 239). Claimant continued to suffer back pain. On September 2, 2005, Dr. Robinson referred claimant to Dr. Emily Rayes-Prince, a pain specialist. (A.R. 238).

The ALJ's evaluation of her treatment is central to this appeal:

> Treatment notes from Dr. Rayes-Prince, the pain specialist, show prescriptions for Oxycontin, Lortab, Skelaxin, Lyrica, and Baclofen. Treatment notes indicate that the claimant did receive pain relief with medications, and that pain increases with activity especially driving and traveling, and cold weather. He was otherwise considered "stable" on medications. He admitted that with pain medication he could increase his functioning including the ability to engage in light yard work. He reportedly stays active with the yard work. . . . Other treatment notes indicate that he was working on his home noting good and bad days and he needed to pace himself. . . . Dr. Rayes-Prince recommended SI joint injections for right SI joint dysfunction . . . . He reported on December 28, 2006, that he was stable on medication with approximately 80 percent pain relief. Medications were OxyContin, Norco, Elavil, Lyrica, and Lunesta. His only complaint was of new onset right leg pain.

> Treatment notes from Dr. Rayes-Prince for 2007 and 2008 indicate that he does outdoor activities with his nine-year-old son, and his medications continue to "work well" for him. He was working in his garden and yard with rest periods. He continued to report approximately 80 percent relief with OxyContin and reported that Norflex works very well. He denied side effects to medication. . . .

(A.R. 18).

Before assessing the extent of claimant's pain, the ALJ noted, "whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must make a finding on the credibility of the statements on a consideration of the entire case record." (A.R. 19). He then concluded that "claimant's testimony of severe and

disabling pain is unsupported by the medical evidence of record." *Id.* With respect to the opinion testimony of Dr. Rayes-Prince, the ALJ reached a similar verdict:

> The undersigned finds that treatment notes of Dr. Rayes-Prince fail to provide objective medical findings in support of her opinion. Treatment notes fail to include any physical findings on examination, and rather only document the subjective complaints of the claimant. The undersigned finds that the opinion of Dr. Rayes-Prince is more consistent with the subjective complaints of the claimant rather than objective medical findings and other opinions. Thus, significant or controlling weight is not given her opinion.

(A.R. 20). Rather, the ALJ "has given greatest weight to the opinion of the non-examining State Agency program physician, which determined that the claimant could perform a range of medium exertional work." *Id.*

*Additional Considerations*

While we accept the facts as found by the ALJ, our independent review of the administrative record reveals that his decision was incomplete and mischaracterized some of Dr. Rayes-Prince's treatment notes.

Dr. Rayes-Prince began treating claimant for pain in January 2006. She continued to treat him until March 3, 2008, which was only a week before his hearing for disability benefits. In all, she saw him twenty-two times in just over two years. In the course of her treatment, she reviewed the notes of prior physicians, including Dr. Goldberg. (A.R. 276). On May 23, 2006, she performed diagnostic tests that led her to conclude that claimant suffered from "severe right carpal tunnel syndrome," "chronic C8-T1 radiculopathy[1] on the right," "mild subacute C5-C6 radiculopathy on the right," and "sensory peripheral neuropathy of bilateral upper extremities." (A.R. 280).

On November 23, 2007, Dr. Rayes-Prince completed a "medical source statement" that concluded that claimant could rarely or never use his right hand for grasping, turning, picking, or otherwise work with either the fingers or whole hand.

---

[1]This condition is essentially the compression of the nerves, sometimes known as a "pinched nerve."

(A.R. 312). He could lift only up to ten pounds with his left hand. Moreover, he would need to lie down to alleviate pain every two hours for twenty minutes at a time. (A.R. 313). In her view, he could not complete a forty-hour work week on a sustained basis. *Id.*

At his disability hearing, claimant testified that he had "bad days" two or three times a week. (A.R. 41). On those days, "I'm not able to do very much of anything, but go to the bathroom." *Id.* He rarely drives and, when he does, it is only locally because it hurts his neck and "I don't feel it's safe under the medication." (A.R. 43). When asked if he could work as the midnight clerk at the "No Tell Motel" where he need only look at closed circuit TV sets without lifting anything heavier than a telephone for eight hours a day, five days a week, he replied that he could not because of the one or two "bad days" he experienced every week. (A.R. 44-45).

We turn now to the medical opinion of Dr. Alexis Guerrero, the state agency physician whose conclusions were credited by the ALJ over those of Dr. Rayes-Prince. On March 8, 2007, Dr. Guerrero completed a physical residual functional capacity assessment based upon claimant's health records. (A.R. 302). He made the following observations concerning the consistency of claimant's symptoms with the total medical and non-medical evidence:

> Claimant alleges loss of strength, feeling, and numbness with accompanying pain in right arm and hand due to job injury in 9/02. She [sic] also alleges lower neck pain radiating to upper back, right shoulder, arm, and hand causing inability to write, grip, or hold and inability to turn her [sic] neck. Claimant's allegations regarding her [sic] work limitations are considered credible based on the objective evidence in the file and are reflected in current RFC [residual functional capacity].

(A.R. 308). Nonetheless, Dr. Guerrero concluded that claimant could occasionally lift 50 pounds, frequently lift 25 pounds, and stand or walk for six hours a day. (A.R. 304). He also found that claimant's "ability to reach and perform gross manipulation is limited to occasional on the right [hand,]" but discerned no restrictions with respect to the left hand. (A.R. 306).

This court cannot help but note that the administrative record reflects that Dr. Guerrero did not reach this conclusion independently; he was provided with a completed residual functional capacity test and asked to sign it "if [you] agree with assessment." (A.R. 302). Moreover, he fails to cite to objective medical evidence to support his determinations. To the contrary, he finds claimant's "allegations regarding her [sic] work limitations . . . credible based on the objective evidence." While he fails to say precisely what that "objective" evidence is, the conclusion that claimant's allegations about his condition are credible would presumably lead to a finding of disability. The cursory nature of Dr. Guerrero's report, underscored by his confusion about claimant's gender, makes it difficult for us to fathom how the ALJ concluded that this opinion represents "the most credible assessment of the claimant's residual functional capacity." (A.R. 20).

## II.

When determining whether a person is entitled to disability benefits, the Commissioner follows a sequential five-step inquiry. 20 C.F.R. § 404.1520. In this case, the ALJ found in favor of claimant with respect to the first four steps. Only the fifth step is at issue, which provides as follows:

> At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520(a)(4)(v). The ALJ concluded that claimant could perform other light work. While the claimant bears the burden of proof during the first four steps, that burden shifts to the Commissioner in step five. *Wilson*, 378 F.3d at 548. At step five, the Commissioner must identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity and vocational profile. *Id.*

At the benefits hearing, the ALJ questioned a vocational expert about claimant's work limitations based upon the opinions of Dr. Rayes-Prince and Dr. Guerrero. The

vocational expert testified that claimant could perform light work as a security guard if the opinion of Dr. Guerrero were credited. If the opinion of Dr. Rayes-Prince were credited, however, the vocational expert conceded that there would be no work that claimant could perform. (A.R. 67).

Typically, the medical opinions of treating physicians, such as Dr. Rayes-Prince, are given controlling weight:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. . . . We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

20 C.F.R. § 404.1527(d)(2). Moreover, when the physician is a specialist with respect to the medical condition at issue, as is Dr. Rayes-Prince, her opinion is given more weight than that of a non-specialist.[2] 20 C.F.R. § 404.1527(d)(5). This court has repeatedly observed that the Commissioner is obliged to follow his own regulations with respect to the weight to be given to treating physicians. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009); *Wilson*, 378 F.3d at 545 (stating that the Commissioner must follow regulations that require he give a good reason for not crediting a treating physician);.

In our view, the administrative record does not support the ALJ's rejection of the medical opinion of Dr. Rayes-Prince. Specifically, he found that Dr. Rayes-Prince's "notes fail to include any physical findings on examination" and tracked claimant's

---

[2]We note that the Kentucky Board of Medical Licensure lists Dr. Guerrero's area of practice as psychiatry. (A.R. 404).

subjective complaints instead of "objective medical findings and other opinions." (A.R. 20). This statement is simply inaccurate for a number of reasons. First, Dr. Rayes-Prince's notes indicate that she reviewed the opinions of other treating physicians, including Dr. Goldberg, (A.R. 276); she also administered an EMG test to evaluate claimant's physical condition. (A.R. 280). Second, she saw claimant twenty-two times over a two-year period; Dr. Guerrero spent less than a day reviewing claimant's file and was asked to approve an RFC assessment prepared by someone else. (A.R. 302). Third, Dr. Rayes-Prince's conclusions were not at odds with those of Dr. Goldberg, who treated claimant more than three years earlier, because there is evidence in the record that claimant's problems were degenerative and chronic. Fourth, claimant's hearing testimony is consistent with Dr. Rayes-Prince's conclusions: he describes two to three "bad days" a week that send him to the couch. (A.R. 38-45). The ALJ's focus on claimant's ability to do "yard work" is misplaced; in his testimony he stated, "I don't dig in the garden or anything like that, nothing heavy or manual." (A.R. 39). Fifth, Dr. Rayes-Prince is a pain specialist and pain is by definition a somewhat subjective matter. As the ALJ correctly noted, in the absence of objective medical evidence, a patient's reports about pain must be assessed with reference to the entire record. (A.R. 19). However, this record contains enough objective medical evidence to support the conclusions reached by Dr. Rayes-Prince.

For all these reasons, we conclude that the ALJ erred when he concluded that the opinion rendered by Dr. Rayes-Prince was not supported by objective medical evidence as required by 20 C.F.R. § 404.1527(d)(2). While the Commissioner contends that the ALJ gave "good reasons" for his conclusion, in our view they are unsupported by the record as a whole and are clearly erroneous. We hold that the medical opinion of claimant's treating physician met the requirements of 20 C.F.R. § 404.1527(d)(2) and should have been accorded controlling weight. Normally, we would remand the matter to allow the ALJ to reassess whether claimant is entitled to disability benefits in light of our holding. However, only a limited remand is necessary in this case. At the disability hearing, the ALJ asked the vocational expert whether, if Dr. Rayes-Prince's opinion were credited, there would be work available for claimant. The vocational expert replied

that there would not.  (A.R. 67).  That being the case, claimant is entitled to disability benefits.  20 C.F.R. § 404.1520(a)(4)(v) ("If you cannot make an adjustment to other work, we will find that you are disabled.").  We remand to the Commissioner with instructions that benefits be awarded.

## III.

The judgment of the district court is **vacated** with instructions to **remand** to the Commissioner for further proceedings consistent with this opinion.