NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 18a0075n.06

**No. 17-1443**

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Feb 14, 2018
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| CHAD E. NETTLEMAN, | ) |
| | ) |
| Plaintiff-Appellant, | ) |
| | ) |
| v. | ) |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant-Appellee. | ) |
| | ) |

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE WESTERN
DISTRICT OF MICHIGAN

**BEFORE: GIBBONS, WHITE, and STRANCH, Circuit Judges.**

**JULIA SMITH GIBBONS, Circuit Judge.** Chad Nettleman appeals the district court's decision affirming the final decision of the Administrative Law Judge ("ALJ") denying him disability insurance benefits and supplemental security income. Nettleman argues on appeal that the ALJ erred in discounting Nettleman's testimony regarding the severity of his medical symptoms. Because substantial evidence supported the ALJ's credibility determination, we affirm the district court.

I.

Nettleman was born in 1971 and spent most of his life working physically demanding jobs, such as construction, carpentry, farming, and factory work. His most recent employment was as a building trades paraprofessional for the school district of Branch County, Michigan. In February 2014, Nettleman applied for disability insurance benefits and supplemental security income, alleging a disability beginning on June 15, 2012. Nettleman complained of various ailments: musculoskeletal, urinary and renal, and cardiovascular and pulmonary. At his hearing

before the ALJ, Nettleman testified to various severe symptoms, including problems using the toilet, hand problems, dizzy spells, chest pain, breathing problems, leg problems, back problems, and ankle problems.

To determine whether Nettleman was disabled, the ALJ followed the five-step sequential evaluation process established by the Social Security Administration. *See* 20 C.F.R. § 404.1520(a). At the first step, the ALJ found that Nettleman had not engaged in substantial gainful activity since June 15, 2012. Next, the ALJ determined that Nettleman's nephrotic syndrome causing his urinary and renal symptoms as well as his chronic obstructive pulmonary disease ("COPD") were severe impairments.[1] He concluded third, however, that Nettleman's severe impairments did not meet the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1, which meant that Nettleman did not warrant an automatic finding of disability based on these impairments.

In the fourth step, the ALJ determined that Nettleman still had residual functional capacity to perform light work, despite his nephrotic syndrome and COPD. In making this finding, the ALJ followed a two-step process: he first determined whether there was an underlying medical impairment that could reasonably be expected to produce Nettleman's pain and symptoms, and, second, he evaluated the intensity of Nettleman's symptoms to determine the extent to which they limited his functioning. The ALJ concluded that Nettleman's impairments could reasonably have been expected to cause his alleged urinary, renal, and pulmonary symptoms. However, in determining the intensity and limiting effects of these impairments, the ALJ discounted Nettleman's testimony, citing lack of credibility. The ALJ pointed to a number of inconsistencies in Nettleman's medical records and previous statements

---

[1] The ALJ also noted Nettleman's claims of musculoskeletal impairment due to his degenerative disc disease, but found this to be a non-severe impairment.

2

and noted that Nettleman had not been fully compliant with his medical treatment, as he had not quit smoking. Accordingly, the ALJ determined that, while Nettleman was unable to perform construction work as he had in the past, he still had residual functional capacity to perform light work. Given this residual capacity, Nettleman's age, education, and work experience, the ALJ held at step five that a significant number of jobs existed in the national economy that Nettleman could perform, and thus Nettleman was not disabled under the Social Security Act.

Nettleman challenged the ALJ's decision, but the agency's Appeals Council denied his request for review. Nettleman then filed his complaint in the Western District of Michigan. The district court affirmed the ALJ's decision. On appeal, Nettleman challenges only the ALJ's determination that Nettleman's testimony about the severity, persistence, and impact of his symptoms was not credible.

## II.

Under the Social Security Act, the Commissioner's factual findings and credibility determinations are reviewed for substantial evidence. 42 U.S.C. § 405(g); *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). On appeal, we review *de novo* the district court's legal conclusion that the Commissioner's decision was supported by substantial evidence. *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 648 (6th Cir. 2011). The substantial-evidence standard requires us to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). If the Commissioner's decision is supported by substantial evidence, we must uphold it, even if substantial evidence also supports the opposite conclusion. *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990). Given the deferential substantial-evidence standard, "[c]laimants challenging

the ALJ's credibility findings face an uphill battle." *Daniels v. Comm'r of Soc. Sec.*, 152 F. App'x 485, 488 (6th Cir. 2005).

Here, the ALJ gave several reasons for discrediting Nettleman's testimony regarding the severity of his symptoms. First, the ALJ noted that Nettleman's testimony at the hearing conflicted with his previous statements. For example, Nettleman testified at the hearing that he needed to go to the bathroom three times per hour, but in May 2012, Nettleman reported to his doctor that he had no urinary symptoms of frequency or incontinence. Additionally, Nettleman made conflicting statements regarding how much he contributed to household chores—stating at the hearing that his wife did all the chores, but writing earlier in a February 2014 function report that he did light cleaning, helped his wife, and went shopping.

Second, the ALJ also pointed out that some of Nettleman's testimony was not supported by medical evidence. Despite Nettleman's severe pain allegations, medical reports showed that Nettleman had normal respiratory, cardiovascular, musculoskeletal, and neurological exams in August 2014 and a renal ultrasound showed normal bladder and kidney functions. Lastly, Nettleman was not completely compliant with his medical treatment, as he was told to quit smoking but had not done so. The ALJ properly considered all these factors to arrive at a credibility determination, discounting the severity of Nettleman's alleged symptoms.

Nettleman also argues that the ALJ erred by finding that collecting unemployment insurance automatically indicated ineligibility for social security disability benefits. However, Nettleman incorrectly interprets the ALJ's opinion. The ALJ did not determine that indicating one's willingness and ability to work in order to collect unemployment necessarily bars a finding of disability. Instead, the ALJ merely considered Nettleman's proffers of his ability to work as inconsistent with his hearing testimony regarding the severity of his symptoms and his inability

to work.  The ALJ was permitted to consider unemployment benefits as one of several factors in evaluating the credibility of Nettleman's allegations.  *See Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 801–02 (6th Cir. 2004).  Thus, Nettleman points to no error in the ALJ's analysis.

Given that the ALJ articulated several bases for discounting Nettleman's credibility, there is substantial evidence supporting the ALJ's credibility finding.

## III.

Accordingly, we affirm the district court's decision.