NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0365n.06

No. 19-2205

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jun 19, 2020
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| JOYCE E. ROTTMANN, | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| COMMISSIONER OF SOCIAL SECURITY, | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| Defendant-Appellee. | ) | |
| | ) | |

BEFORE:    BATCHELDER, GIBBONS, and SUTTON, Circuit Judges.

ALICE M. BATCHELDER, Circuit Judge.   Joyce Rottmann, suffering from several ailments, filed a claim for disability benefits from the Social Security Administration ("SSA"). At her hearing before a SSA Administrative Law Judge ("ALJ"), she submitted reports from two of her treating physicians who advised that Rottmann could not perform tasks such as grasping, pushing, or pulling, and that Rottmann was unable to work.  However, the ALJ gave little weight to the two doctors' opinions after finding that Rottmann's self-reported activities—including weaving, mowing her lawn, riding her motorcycle, and participating in French and Indian War reenactments—were inconsistent with the restrictive recommendations from her doctors.  Because substantial evidence supported the ALJ's factual findings, the district court granted the SSA's motion for summary judgment and denied Rottmann's motion for summary judgment.  For the following reasons, we AFFIRM.

**I.**

Rottmann filed an application for disability benefits on August 20, 2014. She had a hearing before an ALJ on October 27, 2016, to present her case. The ALJ found that Rottmann's impairments were "severe" and included "diabetes mellitus, degenerative disc disease, right shoulder impairment, radiculopathy, carpal tunnel syndrome, affective disorder, and anxiety disorders."

To determine whether a claimant qualifies for disability benefits, the ALJ follows a five-step evaluation process. *See* 20 C.F.R. § 404.1520(a). In this case, the ALJ found that Rottmann met the first two steps: (1) she had not engaged in any gainful activity since her alleged onset date of disability, and (2) her above-listed impairments were severe enough to significantly limit her ability to perform basic work activities. But the ALJ determined that Rottmann failed to meet the third step because her impairments did not meet the severity and duration requirements established in SSA regulations. The ALJ then concluded that Rottmann could not perform her past work (step four), but because "there were jobs that existed in significant numbers in the national economy that [she] could have performed" (step five), she was not disabled.

These findings conflicted with the recommendations of two doctors Rottmann provided: Dr. Ashish Verma, an endocrinologist, and Dr. Diana Ennes, an orthopedic surgeon. Dr. Verma opined that Rottmann could sit for only four hours at a time and stand for up to an hour. Dr. Verma also wrote that Rottmann "cannot go back to work" and when asked on the form when he anticipated Rottmann could return to work, he wrote "[n]ever." Dr. Ennes did not indicate whether Rottmann could return to work but did report that Rottmann would not be able to perform "simple grasping," "pushing/pulling" or "foot/leg controls" (with her right foot/leg) in a workplace environment.

The ALJ discounted these opinions because he found them to be in conflict with other evidence in the record. Specifically, he found that Rottmann's own "self-reported activities of sewing, crocheting, weaving, preparing meals, doing laundry and dishes, participating in war reenactments, riding her motorcycle, and mowing her yard" were inconsistent with the restrictions contained in the opinions of Dr. Verma and Dr. Ennes. Rottmann's husband's testimony affirmed this apparently active lifestyle. Moreover, Dr. Verma's own notes appeared to undercut his diagnosis. For example, Dr. Verma repeatedly recorded that Rottmann had "5/5 normal muscle strength" as well as normal coordination, gait, and station. For these reasons, the ALJ "afford[ed] little weight" to the opinions of Dr. Verma and Dr. Ennes.

On January 26, 2018, the SSA Appeals Council denied Rottmann's request for a review of the ALJ's findings. Rottmann then filed suit in the United States District Court for the Eastern District of Michigan. The district court affirmed the ALJ's findings on August 22, 2019, granting the SSA's motion for summary judgment and denying Rottmann's motion for summary judgment. Rottmann now appeals.

## II.

"This Court reviews district court decisions regarding social security benefits determinations de novo." *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (citation omitted). "Under the Social Security Act, the Commissioner's factual findings and credibility determinations are reviewed for substantial evidence." *Nettleman v. Comm'r of Soc. Sec.*, 725 F. App'x 358, 360 (6th Cir. 2018) (citing 42 U.S.C. § 405(g); *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). "The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Cole*, 661 F.3d at 937 (quoting *Richardson v.*

*Perales*, 402 U.S. 389, 401 (1971)). "If the ALJ's decision is supported by substantial evidence, then reversal would not be warranted even if substantial evidence would support the opposite conclusion." *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 648 (6th Cir. 2011). "Given the deferential substantial-evidence standard, '[c]laimants challenging the ALJ's credibility findings face an uphill battle.'" *Nettleman*, 725 F. App'x at 360 (quoting *Daniels v. Comm'r of Soc. Sec.*, 152 F. App'x. 485, 488 (6th Cir. 2005)).

The crux of Rottmann's argument on appeal is that the ALJ failed to give appropriate weight to the opinions of Dr. Verma and Dr. Ennes and that the ALJ failed to properly explain why he afforded little weight to the doctors' opinions. Specifically, Rottmann alleges that the ALJ failed to follow 20 C.F.R. § 404.1527, which requires that "[a]n ALJ must give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in [the] case record.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(c)(2)). "If the opinion of a treating source is not accorded controlling weight, an ALJ must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion." *Id.* (citing § 404.1527(c)(2)). Rottmann believes that her doctors' opinions should have been afforded more weight and that the ALJ wrongfully failed to consider the factors outlined in § 404.1527(c)(2) when he declined to give those opinions controlling weight. Rottmann also argues that the ALJ did not properly reference her activities in context, failed to address some findings in her doctors' evaluations, and gave too much weight to the state agency physician's opinion.

But Rottmann misstates both what is required of the ALJ when making his findings and the extent to which the ALJ explained his reasoning. First, the ALJ did in fact thoroughly explain why he was not giving controlling weight to the opinions of Dr. Verma and Dr. Ennes. The ALJ expressly stated that he was giving little weight to the doctors' opinions because Dr. Verma's own medical evidence in the record was inconsistent with his opinion and because Rottmann's disability as described in the reports from both doctors conflicted with the ability necessary to participate in Rottmann's self-reported activities. As the ALJ concluded: "These activities show [Rottmann's] functioning is not limited to the extent one would expect given the complaints of disabling symptoms."

Second, we reject Rottmann's argument that the ALJ failed to adequately consider the six factors provided by § 404.1527(c)(2). "The ALJ need not perform an exhaustive, step-by-step analysis of each factor; [he] need only provide 'good reasons' for both [his] decision not to afford the physician's opinion controlling weight and for [his] ultimate weighing of the opinion." *Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 785 (6th Cir. 2017) (citations omitted). While the ALJ did not reference each factor, he did discuss the factor most important to this case, *i.e.*, the consistency (or lack thereof) of the doctors' opinions with the record as a whole. As noted, Rottmann's self-reported activities (and other parts of the record) were markedly inconsistent with the doctors' opinions. Accordingly, we conclude that the ALJ sufficiently explained why he was affording little weight to Rottmann's doctors' opinions.

Third, Rottmann's claimed "accommodations" (e.g., riding a motorcycle without a clutch and mowing her lawn with a zero-radius-turn mower) do not demonstrate that the ALJ mischaracterized her activities or why her participating in those activities, even with the accommodations, required less ability than one would normally expect.

5

Fourth, Rottmann's arguments that the ALJ failed to address certain findings in her doctors' reports are misplaced. "An ALJ need not discuss every piece of evidence in the record for [the ALJ's] decision to stand." *Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004); *see also Loral Def. Sys.-Akron v. NLRB*, 200 F.3d 436, 453 (6th Cir. 1999) ("An ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party. Nor must an ALJ make 'explicit credibility findings' as to each bit of conflicting testimony, so long as his factual findings as a whole show that he 'implicitly resolve[d]' such conflicts.") (citation omitted). Here, the ALJ's analysis demonstrates that he carefully reviewed the record, including Dr. Verma's notes and the self-reported activities from Rottmann. The ALJ's decision may stand even though he did not expressly reference every piece of evidence in the record.

Finally, Rottmann's arguing that the ALJ gave too much weight to the state agency physician, and too little weight to her doctors, is in effect asking this court to reweigh the evidence. But "[t]his court does not weigh evidence, assess credibility, or resolve conflicts in testimony— that's the ALJ's job." *Dyson v. Comm'r of Soc. Sec.*, 786 F. App'x 586, 588 (6th Cir. 2019) (citing *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)).

We review these cases under the highly deferential "substantial evidence" standard. *See Perales*, 402 U.S. at 401 (establishing that the substantial-evidence standard is met by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"). It is difficult to square Rottmann's ability to participate in physical activities requiring some degree of strength and coordination, such as mowing the lawn, riding a motorcycle, or participating in a war reenactment, with Dr. Verma's recommendation that Rottmann's disability precludes her from performing any type of work. Likewise, Rottmann's self-reported activities of sewing, weaving,

and doing laundry directly conflict with Dr. Ennis's recommendation that Rottmann is unable to perform "simple grasping" or "pushing/pulling." Thus, notwithstanding Rottmann's claims to the contrary, these are "good reasons" to give little weight to the doctors' opinions. *See* 20 C.F.R. § 404.1527(c)(2). We therefore agree with the district court that the inconsistencies between Rottmann's self-reported activities and the treating physicians' medical reports provide substantial evidence to support the ALJ's findings.

## III.

For the foregoing reasons, we AFFIRM the judgment of the district court.