**Jeffrey COLE, Plaintiff,**

**v.**

**COMMISSIONER OF SOCIAL SECURITY, Defendant.**

Case No. 13–13422.

United States District Court,
E.D. Michigan,
Southern Division.

Signed April 9, 2015.

Kenneth F. Laritz, Clinton Township, MI, for Plaintiff.

Marc Boxerman, Meghan O'Callaghan, Social Security Administration, Chicago, IL, Theresa M. Urbanic, U.S. Attorney's Office, Detroit, MI, for Defendant.

***OPINION AND ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AFFIRMING THE FINDINGS OF THE COMMISSIONER, AND DISMISSING COMPLAINT***

DAVID M. LAWSON, District Judge.

Plaintiff Jeffrey Cole filed the present action on August 9, 2013 seeking review of

the Commissioner's decision denying the plaintiff's claims for disability insurance benefits under Title II of the Social Security Act and for supplemental security income under Title XVI of the Social Security Act. The case was referred to United States Magistrate Judge David R. Grand under 28 U.S.C. § 636(b)(1)(B) and E.D. Mich. LR 72.1(b)(3). Thereafter, the plaintiff filed a motion for summary judgement to reverse the decision of the Commissioner and remand the case with an order for the administrative law judge (ALJ) to calculate and award benefits. The defendant filed a motion for summary judgment requesting affirmance of the decision of the Commissioner. Magistrate Judge Grand filed a report on July 31, 2014 recommending that the defendant's motion for summary judgment be granted, the plaintiff's motion for summary judgment be denied, and the decision of the Commissioner be affirmed. The plaintiff filed timely objections to the recommendation and the defendant filed a response to the objections. This matter is now before the Court.

When a party files timely objections to a report and recommendation, the Court must "make a de novo determination of those portions of the report or specified findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also United States v. Raddatz*, 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981). This *de novo* review requires the court to re-examine all of the relevant evidence previously reviewed by the magistrate judge in order to determine whether the recommendation should be accepted, rejected, or modified in whole or in part. 28 U.S.C. § 636(b)(1).

"The filing of objections provides the district court with the opportunity to consider the specific contentions of the parties and to correct any errors immedi-

ately," *Walters*, 638 F.2d at 950, enabling the court "to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute," *Thomas v. Arn*, 474 U.S. 140, 147, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). As a result, " '[o]nly those specific objections to the magistrate's report made to the district court will be preserved for appellate review; making some objections but failing to raise others will not preserve all the objections a party may have.' " *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 837 (6th Cir.2006) (quoting *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987)).

The Court has reviewed the file, the report and recommendation, and the plaintiff's objections and has made a *de novo* review of the administrative record in light of the parties' submissions.

The record shows that the plaintiff, who is now 46 years old, filed his application for disability insurance benefits on April 1, 2010, when he was 41. The plaintiff completed the tenth grade, but he did not finish high school. From 1993 to 2005 he worked as a machine builder in the automotive industry. The plaintiff last worked in June 2005 and stopped working when various physical impairments rendered him unable to perform his job as a machine builder. In the application that is the subject of the present appeal, the plaintiff alleged a disability onset date of August 21, 2009. The plaintiff has been diagnosed with blindness and keratitis in the right eye; right elbow epicondylitis; pancreatitis; gout; depression; and a history of alcohol abuse now in remission. However, the plaintiff does not take issue with any of the ALJ's findings on his physical impairments; he focuses solely on his mental impairments.

On April 21, 2010, the plaintiff filed his claim for disability benefits, alleging that

he became disabled on August 21, 2009. The plaintiff's application was denied initially on January 3, 2011. Cole timely filed a request for an administrative hearing, and on September 15, 2011, the plaintiff appeared before ALJ David A. Mason, Jr. On October 4, 2011, ALJ Mason issued a written decision in which he found the plaintiff not disabled. However, the Appeals Council granted Cole's request for review of the decision and remanded for a further hearing. On January 3, 2013, Cole appeared and testified at a second hearing before ALJ Jerome B. Blum. On February 21, 2013, ALJ Blum issued a written decision again finding that Cole was not disabled. On September 18, 2013, the Appeals Council denied the plaintiff's request for review of the second decision. Cole filed his complaint seeking judicial review on August 9, 2013.

In the second decision, ALJ Blum reached the non-disability determination by applying the five-step sequential analysis prescribed by the Secretary in 20 C.F.R. §§ 404.1520, 416.920. He found that the plaintiff had not engaged in substantial gainful activity since August 21, 2009 (step one); the plaintiff suffered from blindness and keratitis in the right eye, right elbow epicondylitis, pancreatitis, gout, depression, and a history of alcohol abuse now in remission, impairments which were "severe" within the meaning of the Social Security Act (step two); none of these impairments alone or in combination met or equaled a listing in the regulations (step three); and the plaintiff could not perform his previous work as an automotive industry machine builder, which was skilled work requiring heavy exertional capacity the way the plaintiff performed the job (step four).

In applying the fifth step, the ALJ concluded that the plaintiff had the residual functional capacity to perform unskilled, sedentary work, with the limitation that he cannot lift more than ten pounds and would need to alternate between sitting and standing as he deemed necessary throughout the workday. A vocational expert (VE) testified that the plaintiff would be able to perform unskilled, sedentary "bench work." The expert testified that there are around 2,000 such jobs in southeast Michigan and 4,000 jobs statewide. Based on these findings and using Medical Vocational Rule 204.00 as a framework, the ALJ concluded that the plaintiff was not disabled within the meaning of the Social Security Act. Following the decision by the ALJ, the plaintiff appealed to the Appeals Council, which denied the plaintiff's request for review on September 18, 2013.

## Plaintiff's Objections

The plaintiff reiterated in his objections that he takes issue solely with the ALJ's findings as to his mental limitations and not the findings and conclusions regarding his physical abilities. The plaintiff did not separately number his objections, but his argument centers on the contention that the magistrate judge incorrectly concluded that substantial evidence supported the final determination of the Commissioner. According to the plaintiff, the ALJ did not pose a complete and accurate hypothetical question to the VE reflecting all of the plaintiff's limitations; misconstrued evidence that the plaintiff failed to seek mental health treatment as tending to show that he did not have a mental illness; improperly disregarded other evidence tending to show that the plaintiff had a serious mental condition; and gave undue weight to the opinion of a reviewing examiner who the plaintiff contends did not review the entire medical record. The defendant responds that (1) the limitation to "unskilled work" encompassed by definition the particular limitations of "simple" and "low stress" work cited by the plaintiff, and (2) the plaintiff's argument that

his failure to seek mental health treatment is itself symptomatic of mental illness is belied by the fact that the plaintiff repeatedly sought treatment for his physical ailments.

■ The plaintiff has the burden to prove that he is disabled and therefore entitled to benefits. *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir.1994); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir.1990).

Under 42 U.S.C. §§ 423(d)(1)(A) & (B) and 1382c(a)(3)(A) & (B), a person is disabled if he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" and the impairment is so severe that the person "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful activity which exists in the national economy." Further, "[a] physical or mental impairment is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

■ To determine disability, the Commissioner has prescribed the five-step process noted above and set forth in 20 C.F.R. §§ 404.1520; 416.920. However, if the plaintiff has satisfied his burden through the first four steps of the analytical process, the burden shifts to the Commissioner to establish that the plaintiff possesses the residual functional capacity to perform other substantial gainful activity. *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir.1987). *See also Allen v. Califano*, 613 F.2d 139, 145 (6th Cir.1980). "To meet this burden, there must be a finding supported by substantial evidence that plaintiff has the vocational qualifications to perform specific jobs."

*Varley*, 820 F.2d at 779 (internal quotes and citations omitted).

The plaintiff contends that because the hypothetical question to the vocational expert did not fully describe the plaintiff's mental impairments, the VE's opinion about the range of jobs available in the economy that the plaintiff could perform was invalid. Therefore, the plaintiff reasons, the Commissioner did not carry his burden of proof at step 5.

### A. First Objection

■ In his first objection, the plaintiff argues that the magistrate judge improperly credited the ALJ's finding that it was "imperative that [the plaintiff] has never sought or received formal mental health treatment," in concluding that the plaintiff's claim that he could not work due to his mental problems was not credible. The plaintiff argues that Social Security Ruling 96–7p and the case law of this circuit indicate that failure to seek treatment for mental health issues can itself be symptomatic of mental health problems, and failure to seek treatment therefore should not be taken as evidence that the plaintiff lacks mental issues.

It is true that the appellate decisions recognize that a claimant's failure to seek or engage in mental health treatment does not necessarily "evidence[ ] a tranquil mental state. For some mental disorders, the very failure to seek treatment is simply another symptom of the disorder itself." *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 283 (6th Cir.2009). But that does not mean that the failure to obtain mental health treatment is irrelevant to the disability determination. "A 'reasonable mind' might . . . find that the lack of treatment . . . [could] indicate[ ] an alleviation of . . . symptoms." *Id.* at 284. That appears to be the import of the ALJ's gloss on the medical records. He did note that the plaintiff "never sought or received

formal mental health treatment." Tr. 27. But that statement is followed by the observation that the plaintiff saw a variety of physicians, including his primary care doctor, who did not find a need to render treatment for depression. Those observations by the ALJ were appropriate to the determination whether the mental impairment was disabling. And as the magistrate judge noted, no treating physician diagnosed a mental impairment or referred the plaintiff to a mental health specialist for treatment. *See* R & R at 747.

### B. Second Objection

■ In his second objection, the plaintiff argues that the magistrate judge improperly concluded that the hypothetical question posed to the vocational expert by ALJ Blum took account of all his mental limitations, because the ALJ directed the VE to consider a person able to perform "unskilled work" and not, "simple, low-stress unskilled work." The plaintiff contends that the state's reviewing examiner did not conclude that the plaintiff could perform any "unskilled work," but only that he could perform "simple" and "low-stress" work that was unskilled. The Court finds the magistrate judge's discussion of this issue thorough and accurate. *See* R & R at 751–53. As the magistrate judge explained, in some cases the limitation to "unskilled work" may not adequately address a concentration deficit. However, the reviewing court's task is to examine the record as a whole and determine if substantial evidence supports the ALJ's RFC. The cases in this district have applied that principle consistently. *See, e.g., Lewicki v. Comm'r of Social Sec.,* No. 09–11844, 2010 WL 3905375, at \*3 (E.D.Mich. Sept. 30, 2010); *Latarte v. Comm'r of Soc. Sec.,* No. 08–13022, 2009 WL 1044836, at \*3 (E.D.Mich. Apr. 20, 2009); *Bohn–Morton v. Comm'r of Soc. Sec.,* 389 F.Supp.2d 804, 807 (E.D.Mich.2005); *see also Infantado v. Astrue,* 263 Fed.Appx. 469, 477 (6th Cir.2008) (concluding that the ALJ's hypo-

thetical question, while it "could have been more complete," adequately accounted for the plaintiff's moderate mental impairments).

In this case, the limitations in the hypothetical question to the VE are supported by Dr. Rom Kriauciunas's broader conclusions that the plaintiff could perform "simple, low-stress, unskilled work" and perform "simple tasks on a sustained basis." Tr. 158.

### C. Third Objection

■ In his third objection, the plaintiff contends that the magistrate judge overlooked evidence from a psychological examination dated December 21, 2010, in which the examiner noted that the plaintiff reported sleep and appetite disruptions, he was poorly groomed and attired and had poor self-esteem, he had "limited insight" and appeared to minimize his symptoms, his stream of mental activity was often vague, he had problems recounting past events, he "described longstanding obsessions and compulsions," and his affect was blunted. The plaintiff contends that these symptoms, along with a Global Assessment of Functioning score of 48, indicate "serious symptoms" that were overlooked by the ALJ and the magistrate judge. The plaintiff further argues that the examiners did not conclude that he could perform work in a "competitive" setting.

■ That argument ignores the reality, however, that there is other evidence in the record that supports the ALJ's RFC determination, as thoroughly discussed by the magistrate judge. When deciding under 42 U.S.C. § 405(g) whether substantial evidence supports the ALJ's decision, the Court "may not try the case *de novo,* nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler,* 745 F.2d 383, 387 (6th Cir.1984); *see also Jordan v. Comm'r of Soc. Sec.,* 548 F.3d 417, 422 (6th Cir.2008); *Smith v.*

*Halter*, 307 F.3d 377, 379 (6th Cir.2001). Instead, the Court must uphold "the ALJ's decision if there is 'such relevant evidence as a reasonable mind might accept' as sufficient to support the ALJ's conclusion." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir.2007) (quoting *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir.2001) (citation omitted)). "The substantial evidence standard is less exacting than the preponderance of evidence standard." *Ibid.* (citing *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 246 (6th Cir.1996)). If the ALJ's decision is supported by substantial evidence, reversal would not be warranted even if substantial evidence supports the opposite conclusion. *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir.2005).

### D. Fourth Objection

■ In his fourth objection, the plaintiff argues that the magistrate judge improperly credited the conclusions of Dr. Edward Halperin, who conducted a review of the plaintiff's "paper file" and prepared a report dated December 15, 2012. The plaintiff contends that it is "unknown" what the "paper file" on the plaintiff included. The plaintiff concedes, however, that Dr. Halperin's report stated that he did review the December 21, 2010 psychological report which the plaintiff cites in his previous objection. The plaintiff argues that, as a non-treating reviewing physician, Dr. Halperin's opinion should have been accorded less weight than that of the treating examiners who prepared the December 2010 report. That may be true, but the authors of that report, Shelly Galasso Bonanno and Dr. Lisa Silver, did not state an opinion that was inconsistent with the ALJ's RFC determination.

After a *de novo* review of the entire record and the materials submitted by the parties, the Court concludes that the magistrate judge properly reviewed the administrative record and applied the correct law in reaching his conclusion. The Court has considered all of the defendant's objections to the report and finds them to lack merit.

Accordingly, it is **ORDERED** that the magistrate judge's report and recommendation [dkt. # 21] is **ADOPTED**.

It is further **ORDERED** that the plaintiff's objections [dkt. # 22] are **OVERRULED**.

It is further **ORDERED** that the plaintiff's motion for summary judgment [dkt. # 16] is **DENIED**.

It is further **ORDERED** that the defendant's motion for summary judgment [dkt. # 20] is **GRANTED**. The findings of the Commissioner are **AFFIRMED**.

### REPORT AND RECOMMENDATION ON CROSS–MOTIONS FOR SUMMARY JUDGMENT [16, 20]

DAVID R. GRAND, United States Magistrate Judge.

Plaintiff Jeffrey Cole ("Cole") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions [16, 20], which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

### I. RECOMMENDATION

For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Cole is not disabled under the Act. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment [20] be GRANTED, Cole's Motion for Summary Judgment [16] be DENIED, and

that, pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision be AFFIRMED.

## II. REPORT

### A. Procedural History

On April 1, 2010, Cole filed applications for DIB and SSI, alleging a disability onset date of August 21, 2009.[1] (Tr. 20, 86–87).[2] These applications were denied initially on January 3, 2011. (Tr. 84–85). Cole filed a timely request for an administrative hearing, which was held on September 15, 2011, before ALJ David A. Mason, Jr. (Tr. 264–98). On October 4, 2011, ALJ Mason issued a written decision finding that Cole was not disabled. (Tr. 52–61). The Appeals Council subsequently granted Cole's request for review and remanded the matter for further administrative proceedings. (Tr. 42–44).

Following remand, another hearing was held on January 3, 2013, before ALJ Jerome B. Blum (hereinafter the "ALJ"). (Tr. 299–309). Cole, who was represented by counsel, appeared in person and testified at the hearing, and the ALJ also heard testimony from vocational expert Michael Rosko. (*Id.*). On February 21, 2013, ALJ Blum issued a written decision finding that Cole is not disabled. (Tr. 20–33). On September 18, 2013, the Appeals Council denied review. (Tr. 4–7). Cole then filed for judicial review of the final decision on August 9, 2013. (Doc. # 1).

### B. Background

#### 1. Cole's Reports and Testimony [3]

At the time of the January 2013 administrative hearing, Cole was 43 years old. (Tr. 301–02). He completed the tenth grade but had no further education. (Tr. 90). From 1993 to 2005, Cole worked as a machine builder in the automotive industry. (*Id.*). He indicated that he stopped working in June 2005 because of his medical conditions. (*Id.*).

Cole testified that he suffered from both physical and mental impairments during the relevant time period.[4] (Tr. 302). From a mental perspective, Cole indicated that he suffers from emotional problems and is "depressed all the time." (Tr. 108,

---

1. Previously, Cole had filed applications for DIB and SSI in August 2006. These claims were denied initially in December 2006. At Cole's request, an administrative hearing was held on May 14, 2009, after which ALJ Robert C. Asbille issued a written decision finding that Cole was not disabled. Cole did not appeal that decision. (Tr. 20).

2. The transcript referenced in this Report and Recommendation is the un-indexed transcript filed with the Court on February 27, 2014. (Doc. # 15).

3. Because Cole challenges only the ALJ's assessment of his mental limitations—and, specifically, his limitations with respect to maintaining concentration, persistence, or pace—the Court will focus its discussion primarily on evidence relating to Cole's mental condition.

4. From a physical perspective, Cole indicated that he is blind in his right eye and that, approximately twice a year, he gets a "flare-up" of sharp eye pain and bleeding. (Tr. 302). Although the vision in his left eye has worsened slowly over time, he is still able to read handwriting and newspapers and make out pictures on the television. (Tr. 306). In addition, he has tendonitis in his elbow and has difficulty gripping and grasping objects. (Tr. 302). Cole also has gout and testified that he experiences flare-ups at least once a month, which last anywhere from one to two weeks. (Tr. 304). He also experiences frequent diarrhea as a result of chronic pancreatitis and gastroduodenitis. (*Id.*). Cole further testified that his "hip is dead" because it has not been "getting blood" for some period of time and, as a result, he cannot walk or stand and must use crutches. (Tr. 303). Although many of Cole's alleged physical conditions are not specifically borne out by the medical evidence, the Court need not resolve these discrepancies, as Cole challenges only the ALJ's assessment of his *mental* conditions.

305). Cole indicated that these problems stem in part from the fact that his daughter was in and out of the hospital for five years with an eating disorder, and his son was severely injured in a car accident. (*Id.*). Cole indicated that his primary care physician prescribed Lexapro for depression. (Tr. 92). He is able to pay bills, count change, and handle a checking and savings account. (Tr. 110). However, he has trouble finishing what he starts and indicated that he is "under a lot of stress." (Tr. 112–13).

### 2. Medical Evidence

Medical records from Cole's treating physicians say very little with respect to any mental impairments or limitations. (Tr. 168–249). On October 9, 2008, Cole's gastroenterologist reported that Cole was "under 'unbearable stress,'" apparently as a result of the chronic diarrhea he had been experiencing for approximately one year. (Tr. 186). Cole indicated that his family doctor had prescribed Lexapro, but he had not taken it because it was "very expensive." (*Id.*). Cole's gastroenterologist did not note any psychiatric symptoms at this visit, however. (Tr. 18690). Twice subsequently—in December 2008 and February 2010—Dr. Wayne Gunckle, who treated Cole's elbow pain, noted that Cole said he felt severely depressed and had considered suicide. (Tr. 210, 220). Records also indicate that Cole's primary care physician prescribed Elavil in March 2009 (but Cole did not take it) and again in June 2009. (Tr. 182–83).

In May 2012, a specialist who evaluated Cole for elevated blood counts noted that he was "severely depressed" (but was not having suicidal thoughts), and recommended that he follow up with his primary care physician for further treatment. (Tr. 249). Even after Cole returned to his family doctor, however, he failed to re-port—and his doctor failed to note—any depression-related symptoms. (Tr. 239). In all other respects, progress notes from Cole's treating physicians were completely normal with respect to Cole's mental status, and no treating physician diagnosed any mental impairment or referred him for mental health treatment. (Tr. 168–249).

On December 21, 2010, Cole underwent a consultative psychological examination with Shelley Galasso Bonanno, a limited licensed psychologist, and Lisa Silver, Ph.D. (Tr. 226–32). At that time, Cole reported symptoms of depression stemming from a fear of losing his house and difficulties with his wife and children. (Tr. 227). He also reported sleep and appetite disturbances, a loss of interest in pleasurable activities, fatigue, and feelings of hopelessness. (*Id.*). Cole denied a history of outpatient mental health services. (*Id.*). He indicated that he had been arrested for drunk driving on two occasions and said that, up until April 2009, he "drank a 12 pack of beer a day since [he] was 18." (*Id.*). Cole also indicated that he had been arrested at various times for leaving the state while on probation, unpaid child support, and attempted murder. (*Id.*). When asked about daily activities, Cole indicated that he tries his best with respect to interpersonal relationships and enjoys fishing and going to the gym. (Tr. 228). He also stated that he tries to perform household chores, but how much he can do depends on his physical pain. (*Id.*). During the examination, it was noted that Cole was cooperative and appeared motivated, but he had low self-esteem, limited insight, a blunted affect, and could not perform serial 7's. (Tr. 228–30). Ms. Bonanno diagnosed alcohol abuse, depressive disorder NOS, and cognitive disorder NOS; assigned a Global Assessment of Functioning ("GAF")[5] score of 48; and characterized Cole's prognosis as "guarded." (Tr. 231).

---

**5.** GAF examinations measure psychological, social, and occupational functioning on a con-

748

Edward Halperin, M.D., a psychiatrist, also provided a report dated December 15, 2012. (Tr. 263). Dr. Halperin stated that he had reviewed Cole's file, including Ms. Bonanno's consultative examination. (*Id.*). He opined that Cole's activities of daily living were limited as a result of his physical problems, and stated that any deficits with concentration, persistence, or pace would "not interfere with his capability to do simple work." (*Id.*). In conclusion, Dr. Halperin indicated that he agreed with the diagnoses assessed by Ms. Bonanno and Dr. Silver and further opined that Cole's "primary problems are physical rather than psychological." (*Id.*).

On December 30, 2010, Rom Kriauciunas, Ph.D., a state agency medical consultant, reviewed Cole's records and completed a Mental Residual Functional Capacity ("RFC") Assessment and a Psychiatric Review Technique ("PRT"). (Tr. 142–59). He noted that Cole suffers from an affective disorder (as defined in Listing 12.04). (Tr. 142, 145). On the PRT form, Dr. Kriauciunas rated the "paragraph B" criteria of the mental impairment listings as follows: mild restriction in activities of daily living; moderate difficulties maintaining social functioning; moderate difficulties maintaining concentration, persistence, or pace; and no episodes of decompensation.[6] (Tr. 152). In Section III of the Mental RFC Assessment form, Dr. Kriauciunas opined that Cole was able to do "simple, low-stress, unskilled work" and perform "simple tasks on a sustained basis." (Tr. 158).

### 3. Vocational Expert's Testimony

Michael Rosko testified as an independent vocational expert ("VE") at the January 2013 administrative hearing. (Tr. 306–09). The VE characterized Cole's past relevant work as a machine builder as skilled in nature and performed at the heavy exertional level. (Tr. 307). Then, the ALJ asked the VE to imagine a claimant of Cole's age, education, and work experience, who could perform unskilled sedentary work, but could lift up to ten pounds and must have the option to sit or stand at will. (*Id.*). The VE testified that the hypothetical individual would not be capable of performing Cole's past relevant work. (*Id.*). However, the VE testified that the hypothetical individual would be capable of working in various bench jobs (4,000 jobs in the state of Michigan). (*Id.*).

tinuum of mental-health status from 0 to 100, with lower scores indicating more severe mental limitations. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 276 (6th Cir.2009).

**6.** Specifically, in Section I of his RFC Assessment, Dr. Kriauciunas opined that Cole is not significantly limited in the ability to remember locations and work-like procedures; understand, remember, and carry out very short and simple instructions; perform activities within a schedule and maintain regular attendance; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being distracted by them; make simple work-related decisions; complete a normal workday and work week without interruptions from psychological symptoms; ask simple questions or request assistance; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers without distracting them; maintain socially appropriate behavior; be aware of normal hazards and take appropriate precautions; travel in unfamiliar places or use public transportation; and set realistic goals and make plans independently of others. (Tr. 156–57). Dr. Kriauciunas further opined that Cole is moderately limited in the ability to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; interact appropriately with the general public; and respond appropriately to changes in the work setting. (*Id.*).

## C. Framework for Disability Determinations

Under the Act, SSI and DIB are available only for those who have a "disability." *See Colvin v. Barnhart,* 475 F.3d 727, 730 (6th Cir.2007). The Act defines "disability" as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.,* 2011 WL 6937331, at *7 (E.D.Mich. Dec. 6, 2011) (citing 20 C.F.R. §§ 404.1520, 416.920); *see also Heston v. Comm'r of Soc. Sec.,* 245 F.3d 528, 534 (6th Cir.2001). "The burden of proof is on the claimant throughout the first four steps.... If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.,* 14 F.3d 1107, 1110 (6th Cir.1994).

## D. The ALJ's Findings

Following the five-step sequential analysis, the ALJ found that Cole is not disabled under the Act. At Step One, the ALJ found that Cole has not engaged in substantial gainful activity since August 21, 2009, the alleged onset date. (Tr. 24). At Step Two, the ALJ found that Cole has the severe impairments of blindness and keratitis in the right eye, right elbow epicondylitis, pancreatitis, gout, depression, and history of alcohol abuse now in remission. (*Id.*). At Step Three, the ALJ found that Cole's impairments do not meet or medically equal a listed impairment. (Tr. 24–26).

The ALJ then assessed Cole's residual functional capacity ("RFC"), concluding that he is capable of performing unskilled sedentary work, but can lift up to ten pounds and needs to alternate between sitting and standing as he deems necessary throughout the day. (Tr. 26–31).

At Step Four, the ALJ determined that Cole is unable to perform his past relevant work as a machine builder. (Tr. 31). At Step Five, the ALJ concluded, based in part on the VE's testimony, that Cole is capable of performing a significant number of jobs that exist in the national economy. (Tr. 32–33). As a result, the ALJ concluded that Cole is not disabled under the Act. (Tr. 33).

### E. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir.2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir.2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir.2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir.2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512–13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir.1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir.1989). There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir.2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir.1994) (internal citations omitted).

### F. Analysis

In his written decision, the ALJ found that Cole has the severe mental impairments of depression and a history of alcohol abuse (now in remission), which impose limitations on his ability to work.[7] (Tr. 24). The ALJ then concluded that Cole has the mental RFC to perform unskilled work. (Tr. 26–31). In his motion, Cole argues that the ALJ's mental RFC finding (and the hypothetical questions subsequently posed to the VE) failed to properly take into account his moderate limitations

---

7. Additionally, as set forth above, the ALJ found that Cole has the severe physical impairments of blindness and keratitis in the right eye, right elbow epicondylitis, pancreatitis, and gout. (Tr. 24). As a result, the ALJ found that Cole is physically limited to a reduced range of sedentary work. (Tr. 26–31). Cole does not challenge the ALJ's physical RFC finding, and the Court finds that it is supported by substantial evidence.

with respect to concentration, persistence, or pace. (Doc. # 16 at 20–24).

As an initial matter, substantial evidence supports the ALJ's finding that Cole retains the mental RFC to perform unskilled work. In reaching this conclusion, the ALJ found it "imperative" that Cole had never sought or received formal mental health treatment. (Tr. 27). The ALJ referenced a May 2012 observation made by one of Cole's treating physicians that he appeared "severely depressed" and recommended that Cole follow up with his family doctor. (Tr. 27, 249). However, the ALJ also noted that Cole's family doctor never diagnosed depression or any related symptoms. (Tr. 27). Nor did the doctor refer Cole for mental health treatment. (*Id.*). Moreover, the ALJ's limitation to unskilled work is entirely consistent with Dr. Halperin's December 2012 observation that Cole mentioned no problems with concentration or pace to the consultative psychologists and his observation that Cole had primarily physical—rather than psychological—problems. (Tr. 28, 263). This limitation is also consistent with the opinion of the state agency reviewing psychologist, Dr. Kriauciunas, that Cole retains the RFC to perform "simple, low-stress, unskilled work" on a sustained basis.[8] (Tr. 158).

Citing *Edwards v. Barnhart*, 383 F.Supp.2d 920 (E.D.Mich.2005), and other cases, Cole argues that the ALJ's limitation to unskilled work does not adequately address his moderate CPP limitations. (Doc. # 16 at 21–24). This is a frequently litigated issue in the Eastern District of Michigan. It is true that, in certain situations, courts have held that limiting a claimant to merely "simple," "unskilled," or "routine" work is insufficient to address moderate CPP deficiencies.[9] It is equally true, however, that courts have held that, under some circumstances, limitations like those imposed by the ALJ in the instant case adequately account for such deficiencies. *See, e.g., Bohn–Morton v. Comm'r of Soc. Sec.*, 389 F.Supp.2d 804, 807 (E.D.Mich.2005) ("unskilled" work limitation in RFC was sufficient to account for ALJ's finding that claimant "often" experi-

---

**8.** Much of Cole's brief is dedicated to an argument that the ALJ's mental RFC finding should have included limitations that correspond specifically with Dr. Kriauciunas' check-box findings—contained in Section I of the Mental RFC Assessment form—that Cole is moderately limited in his ability to understand, remember, and carry out detailed instructions, and maintain attention and concentration for extended periods of time. (Doc. # 16 at 21–24 (citing Tr. 156–58)). This argument, however, misapprehends the purpose and function of the different sections of the Mental RFC Assessment form. Section I of the form is "merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and **does not constitute the RFC assessment.**" Program Operation Manual System ("POMS") DI 24510.060(B)(2)(a) (emphasis in original). Section III, entitled "Functional Capacity Assessment," contains the mental RFC assessment of the state agency psychiatrist. *See* POMS DI 24510.060(B)(4)(a). POMS is viewed as persuasive authority in

this circuit, and other courts have rejected arguments similar to Cole's—that the ALJ should have incorporated Section I findings into the RFC analysis. *See Joiakim v. Comm'r of Soc. Sec.*, 2011 WL 1120043, at *6 (E.D.Mich. Mar. 8, 2011) ("Section I of the mental assessment is merely a worksheet and does not constitute the RFC assessment.") (citing cases). In this case, Dr. Kriauciunas apparently summarized his Section I findings (namely, that Cole was moderately limited in only five of the twenty areas evaluated) in Section III. Regardless, however, the fact that these check-box findings from Section I were repeated in Section III does not detract from Dr. Kriauciunas' ultimate opinion, which is that Cole retains the ability to perform simple, low-stress, unskilled work on a sustained basis. The ALJ's mental RFC finding is consistent with this conclusion.

**9.** *See, e.g., Benton v. Comm'r of Soc. Sec.*, 511 F.Supp.2d 842, 849 (E.D.Mich.2007); *Green v. Comm'r of Soc. Sec.*, 2009 WL 2365557, at *10 (E.D.Mich. July 28, 2009).

ences issues with CPP); *Edmunds v. Comm'r of Soc. Sec.*, 2010 WL 3633768, at *8 (E.D.Mich. Aug. 17, 2010) (substantial evidence supported ALJ's finding that claimant with moderate CPP deficiencies could perform "simple, routine, repetitive" work).

There is no bright-line rule requiring remand whenever an ALJ's RFC finding (and subsequent hypothetical) includes a limitation to "unskilled work" but does not contain a more specific concentration-related limitation. *See Jones v. Comm'r of Soc. Sec.*, 2012 WL 4355532, at *9 (E.D.Mich. Sept. 24, 2012); *Caradine v. Comm'r of Soc. Sec.*, 2013 WL 388729, at *7 (E.D.Mich. Jan. 11, 2013). Rather, the court must look at the record as a whole and determine whether substantial evidence supports the RFC. *See Jones, supra* at *9; *Caradine, supra* at *7; *Lewicki v. Comm'r of Soc. Sec.*, 2010 WL 3905375, at *3 (E.D.Mich. Sept. 30, 2010) ("There may be cases where such moderate limitations preclude the performance of even some simple, unskilled tasks. Plaintiff does not, however, explain why the facts of this particular case require a more detailed hypothetical question to adequately account for his own moderate limitations in concentration, persistence, or pace.").

In *Hess v. Comm'r of Soc. Sec.*, 2008 WL 2478325, at *7 (E.D.Mich. June 16, 2008), the court considered the adequacy of the ALJ's conclusion that the claimant retained the RFC to perform "simple routine tasks in a low stress environment." In that case, as here, the state agency doctor completed both a PRT, finding that the plaintiff had a moderate CPP limitation, and a Mental RFC Assessment Form, finding that the plaintiff had moderate limitations in several concentration-related categories. *Id.* at *7. However, as is also the case here, the doctor ultimately concluded that the plaintiff retained the ability to perform unskilled tasks on a sus-

tained basis. *Id.* at *4. The *Hess* court concluded that because the ALJ relied on the state doctor's finding of a moderate impairment with respect to CPP, it was reasonable for the ALJ to rely on that doctor's ultimate conclusion that the plaintiff could perform unskilled work on a sustained basis and, accordingly, to omit a more specific, concentration-based limitation from the hypothetical. *Id.* at *8. Many recent Eastern District of Michigan cases have been similarly decided. *See, e.g., Young v. Comm'r of Soc. Sec.*, 2011 WL 2601014, at *10 (E.D.Mich. May 23, 2011) ("Although Plaintiff correctly cites the moderate limitations noted in the assessment, Plaintiff fails to mention that the same assessment also concluded that Plaintiff is 'capable of unskilled work.' "); *Taylor v. Comm'r of Soc. Sec.*, 2011 WL 2682682, at *8 (E.D.Mich. May 17, 2011) ("[T]his Court finds that Dr. Marshall's findings that Plaintiff has moderate limitations in concentration, persistence, and pace have to be considered in conjunction with his ultimate conclusion (twice reached) that, despite the concentrational limitations, Plaintiff could perform unskilled work on a 'sustain[ed] basis.' "); *Seach v. Comm'r of Soc. Sec.*, 2011 WL 1792666, at *8 (E.D.Mich. Apr. 6, 2011) ("The undersigned concludes that the ALJ's determinations regarding Plaintiff's mental impairments are fully supported by the substantial evidence in the administrative record. In this matter, the State Agency examiner specifically stated that Plaintiff's 'psychological limitations do not appear to interfere with potential for work activities that are simple in nature. [Plaintiff] retains the capacity for simple tasks on a sustained basis.' "); *Lewicki,* 2010 WL 3905375, at *3 ("Plaintiff's objection ignores a particularly compelling piece of evidence provided by the same state psychologist who diagnosed Plaintiff's mental limitations in the first place. The

psychologist diagnosed moderate mental impairments, but also concluded that Plaintiff's mental limitations would not prohibit him from performing simple, unskilled work.").

As in *Hess* and *Lewicki*, the ALJ's finding of a moderate CPP limitation should be considered in conjunction with Dr. Kriauciunas' broader conclusion, that Cole can successfully perform unskilled work. (Tr. 158) (finding that he could perform "simple, low-stress, unskilled work" and perform "simple tasks on a sustained basis."). *See also De–Giber v. Comm'r of Soc. Sec.,* 2012 WL 6966653, at *9 (E.D.Mich. Oct. 24, 2012); *Carlin v. Comm'r of Soc. Sec.,* 2013 WL 639338, at *7 (E.D.Mich. Jan. 11, 2013) (the ALJ's RFC limitation of plaintiff to simple, routine work was sufficient where state psychologist concluded that plaintiff was moderately limited with respect to CPP but retained the capacity to "perform simple, routine tasks on a sustained basis"). Thus, under the facts of this case, by expressly limiting Cole to "unskilled work," the ALJ adequately accounted for Cole's moderate CPP limitations.

Cole also argues that the ALJ's hypothetical questions were insufficient because they failed to account for all of his credible limitations. (Doc. # 16 at 17–24). An ALJ may rely on the testimony of a vocational expert to determine whether jobs would be available for an individual who has particular workplace restrictions. *See Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir.2004). In order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of a conclusion that the claimant can perform other work, the question must accurately portray the claimant's physical and mental impairments. *See Ealy v. Comm'r of Soc. Sec.,* 594 F.3d 504, 516 (6th Cir.2010). In this case, to the extent Cole argues that

his functional limitations were greater than those found by the ALJ, the Court has already rejected that argument. The ALJ posed a complete hypothetical question to the VE—asking him to consider an individual with Cole's age, education, work experience, and RFC—and reasonably accepted the VE's testimony that the hypothetical individual described could perform work that exists in significant numbers in the national economy. This testimony provides substantial evidence to support the ALJ's finding that Cole is not disabled. *See Felisky v. Bowen,* 35 F.3d 1027, 1036 (6th Cir.1994) (where hypothetical accurately described the plaintiff in all relevant respects, the VE's response to the hypothetical question constitutes substantial evidence).

## III. CONCLUSION

For the foregoing reasons, the Court RECOMMENDS that the Commissioner's Motion for Summary Judgment [20] be GRANTED, Cole's Motion for Summary Judgment [16] be DENIED, and the ALJ's decision be AFFIRMED.

Filed July 31, 2014.